UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JAMES R. WALL, VICKI L. WALL and    ‖
JAMES W. BAGBY, Individually and on    ‖
behalf of themselves and as representatives of ‖
a class of all others similarly situated,    ‖
   ‖
       **Plaintiffs,**    ‖
   ‖
v.    ‖        **CIVIL NO. SA-09-CA-637-OG**
   ‖
DEBT RELIEF GROUP, LLC; THE    ‖
PALMER FIRM, P.C.; THE SEIDEMAN    ‖
LAW FIRM, P.C.; EPIC FINANCIAL    ‖
MANAGEMENT, INC.; ROBERT ANCEL    ‖
PALMER, III; SCOTT R. SEIDEMAN;    ‖
GREGORY M. FITZGERALD; and KEITH ‖
J. WARING,    ‖
   ‖
       **Defendants.**    ‖

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

**TO:**    **Honorable Orlando L. Garcia**
       **United States District Judge**

      Pursuant to the Order of referral in the above-styled and numbered cause of action to the

undersigned United States Magistrate Judge[1] and consistent with the authority vested in United

States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(i)(B) and rule 1(d) of the

Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western

District of Texas, District of Texas, the following report is submitted for your review.

**I. JURISDICTION**

      Plaintiffs have alleged federal subject matter jurisdiction pursuant to the Class Action

---

[1] Docket no. 33 (Sept. 28, 2009).

Fairness Act ("CAFA"), 28 U.S.C. § 1332, because the matter in controversy exceeds $5 million, exclusive of interests and costs and is a putative class action involving 100 or more class members in which any member of the class of plaintiffs is a citizen of a state different from any defendant.  Plaintiffs allege venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the alleged acts and omissions occurred in the Western District of Texas.

## II.  PROCEDURAL HISTORY

On August 6, 2009, plaintiffs James R. Wall ("Mr. Wall"), Vicki L. Wall, and James W. Bagby (collectively, "plaintiffs") initiated this suit by filing their "original class action complaint."[2]  Prior to any appearance by any defendant, on August 17, 2009, plaintiffs filed their first amended class action complaint, asserting two counts, including class allegations, and naming eight defendants.[3]  In sum, the first amended complaint alleged plaintiffs, residents of San Antonio, Texas, signed an agreement and paid money to secure for themselves debt management services offered by certain defendants.  The first amended complaint alleged the agreements are void, the fees charged are illegal, and asserted claims on behalf of themselves and others similarly situated to obtain damages and related relief.  The eight defendants named in the first amended complaint were: (1) Palmer Firm, P.C. ("Palmer Firm"), a law firm and Texas corporation with its principal office in Dallas, TX and registered to do business in California; (2) Robert Ancel Palmer, III, a lawyer licensed to practice in Texas, residing in Dallas, and alleged to be the sole officer of the Palmer Firm in Texas;[4] (3) Scott R. Seideman, a lawyer licensed to

---

[2] Docket no. 1.

[3] Docket no. 3.

[4] Id. at 3-4, 7.

practice in Texas, residing in Dallas and alleged to be the sole officer and director of (4)

defendant Seideman Law Firm, P.C., a law firm and Texas corporation with its principal office in

Dallas, TX, and registered to do business in California; (5) Gregory M. Fitzgerald, a lawyer

licensed to practice in California who practices in the Seideman Firm;[5] (6) Debt Relief Group,

LLC ("DRG"), a Nevada corporation licensed to do business in and with its principal place of

business in California; (7) Epic, a California corporation with its principal place of business in

California; and (8) Keith J. Waring, a resident of California[6] and the owner and manager of DRG

and Epic.[7]

Relying on the Debt Management Services Act of Texas ("DMSA"), codified in Chapter

394, Subchapter C, of the Texas Finance Code, the first amended complaint alleged all

defendants were jointly and severally liable for "participatory liability – conspiracy" to violate

the DMSA and actual violations of the DMSA.[8]  As relief, plaintiffs sought an award of actual

damages, treble damages, statutory penalties, reasonable and necessary attorney's fees,

prejudgment interest, postjudgment interest, costs, and any other relief to which they and the

class may be entitled.[9]  Plaintiffs demanded a jury trial.[10]

On September 28, 2009, the District Judge referred this case to the undersigned for

---

[5]  Id. at 3, 8.

[6]  Id. at 3, 4, 5, 8.

[7]  Id. at 8.

[8]  Id. at 14-16.

[9]  Id. at 16.

[10]  Id.

pretrial management.[11]  On October 13, 2009, the District Judge entered an Order staying the

case at least until pending motions have been resolved.[12]  On November 4, 2009, the undersigned

entered a report recommending:

● Palmer and the Palmer Firm's motion to compel arbitration and to dismiss[13] be granted and plaintiffs' complaint and claims again the Palmer defendants be dismissed without prejudice to re-filing in arbitration; in the event the arbitrator should determine that plaintiffs' claims should be presented to a court of competent jurisdiction, dismissal without prejudice will not prevent plaintiffs from re-filing a complaint;

● Palmer and the Palmer Firm's motion to dismiss[14] be denied as moot without prejudice to the matters addressed in the motion or responsive pleadings being raised in arbitration;

● Palmer and the Palmer Firm's motion to strike[15] be denied as moot without prejudice to the matters addressed in the motion or responsive pleadings being raised in arbitration; and

● Seideman, Fitzgerald, and the Seideman Firm's motion for stay pending arbitration[16] be denied.[17]

The same day, the undersigned issued a companion report recommending:

● the Seideman defendants' motion to dismiss for failure to state a claim[18] be granted and each of plaintiffs' claims against the Seideman defendants should be

---

[11]  Docket no. 33.

[12]  Docket no. 47.

[13]  Docket no. 5.

[14]  Docket no. 9.

[15]  Docket no. 10.

[16]  Docket no. 23.

[17]  Docket no. 61.

[18]  Docket no. 22.

dismissed; and

- if the District Judge accepts this report and/or the companion report tendered this date to the Clerk for filing (recommending dismissal of claims against the Palmer defendants in favor of arbitration and mooting the Palmer defendants' alternative motions to strike and dismiss), plaintiffs' motion to file a second amended complaint[19] should be denied.[20]

On December 22, 2009, the undersigned entered a report recommending:

- the Waring defendants' Rule 12(b)(2) motion to dismiss[21] should be: (a) granted in part such that all claims for against Epic and Waring be dismissed based on lack of personal jurisdiction; and (b) denied with respect to the claims against DRG;

- the Waring defendants' Rule 12(b)(6) motion to dismiss[22] should be granted to the extent the Court has personal jurisdiction over any and all claims against DRG, Epic, and Waring, and all such claims should be dismissed without prejudice for failure to state a claim for relief; and

- the Waring defendants' motion to strike[23] should be granted and any and all causes of action under the DMSA which plaintiffs assert on behalf of non-Texas residents should be stricken from the first amended complaint.[24]

On April 4, 2010, the District Court accepted the November 4 and December 22, 2009 reports.[25] As a result, plaintiffs were denied leave to file a second amended complaint, and the claims against all defendants were dismissed. The District Court left the stay in place pending a

---

[19] Docket no. 28.

[20] Docket no. 62.

[21] Docket no. 27.

[22] Id.

[23] Id. at 19.

[24] Docket no. 67 at 47-48.

[25] Docket no. 72 at 2-3.

recommendation from the undersigned that it be lifted.[26]

On April 9, 2010, the undersigned granted plaintiffs leave to file their third amended class action complaint, and the complaint was filed the same day.[27]  DRG is the only defendant named in the third amended complaint, and all claims under Texas law have been omitted.[28]  According to the third amended complaint, "[p]laintiffs, the debtor customers of DRG, seek to represent a class of debtors that have purchased regulated prorat[e]r services from DRG" in violation of the California Check Sellers, Bill Payers and Proraters Law ("CSBPPL"), [California] Financ[e] Code Sections 12200, 12314, 12315, and 12316."[29]  The third amended complaint alleges:

> Defendant [DRG] operates an elaborate nationwide scheme from their offices in California promoted by television and internet advertising to defraud debtors that are drowning in credit card and unsecured debt.  By masquerading as an attorney referral service to solicit clients for unregistered debt negotiators and attorneys claiming exemption from regulation, DRG "fronts" its law breaking partners to evade strict consumer protection regulations enacted to protect unknowing debtors.[30]

Because of these acts, allegedly, the "DRG contracts with Plaintiffs and other similarly situated debtor clients are void."[31]  The third amended complaint asserts one cause of action under the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*, specifically § 1770(a)(17) based on DRG's alleged sale of prorater services to plaintiffs in

---

[26]  Id. at 3.

[27]  Docket nos. 74 and 75.

[28]  Docket no. 75 at 1.

[29]  Id. at 1 and 2.

[30]  Id. at 1-2.

[31]  Id. at 2.

6

violation of the CSBPPL, and one cause of action under the California Unfair Competition Law ("CUCL"), California Business & Professional Code §§ 17200, *et seq*., based on DRG's alleged violations of the CSBPPL and the CLRA.[32]  Plaintiffs seek an order:

    (a)    declaring the DRG contracts with the Plaintiffs and class members null and void;

    (b)    enjoining DRG from continuing to engage in the business of prorating and charging unconscionable and excessive service fees; and

    (c)    awarding restitution and disgorgement of all fees paid to DRG, punitive damages, interest, attorneys' fees and costs.[33]

On April 26, 2010, DRG filed a Rule 12(b)(6) motion to dismiss or alternative motion to transfer venue pursuant to 28 U.S.C. § 1404 to the United States District Court for the Central District of California, Southern Division.[34]  Plaintiff filed a response on June 1, 2010.[35]  DRG filed a reply in support of its motion on June 14, 2010.[36]

### III.  FACTUAL BACKGROUND

Because DRG has moved to dismiss plaintiffs' claims pursuant to Rule 12(b)(6), the following facts, derived from plaintiffs' third amended complaint, are taken as true and construed in plaintiffs' favor:[37]

---

[32]  Id. at 2, 12-14.

[33]  Id. at 2.

[34]  Docket no. 77.

[35]  Docket no. 82.

[36]  Docket no. 83.

[37]  Katrina Canal Breaches, 495 F.3d at 205.

Defendant DRG "operates its debt settlement sales activities" from its California office "where it solicited, sold, provided intake, processed and made debt settlement client referrals to the Palmer law firm."[38]  The DRG Client Agreement "is an attorney solicitation fiction designed to give potential debtor clients the false impression of services to be provided and the aura of legitimacy."[39]  The client agreement does not include DRG's signature or contact information.[40]  Only a counselor and address is identified in the "client data form, client transmittal page and the welcome letter from the Palmer Firm sent by DRG[.]"[41]  DRG "functioned as the solicitation and intake processor for the debtors they referred to the Palmer Firm for debt settlement[.]"[42]

DRG's television advertisements drew plaintiffs to call an 800 number for "Credit Counseling and Debt Consolidation and promises to negotiate credit card and other non-secured balances, stop creditor harassment, design an affordable monthly budget and protect debtors rights throughout the whole process."[43]  DRG also advertises on an internet website.[44]  DRG provided plaintiffs with "the DRG Client Agreement and Palmer Firm Legal Services [A]greement."[45]  Plaintiffs returned the signed agreements and required payments to DRG's

---

[38]  Docket no. 75 at 3.

[39]  Id.

[40]  Id.

[41]  Id. 3-4.

[42]  Id. at 4.

[43]  Id.

[44]  Id.

[45]  Id.

office.[46]

The DRG Client Agreement provides that "I hereby engage the professional services of DRG to provide a third party review of my financial situation **and guidance for a debt referral**."[47]  "DRG served as the 'front' to provide the debtor client referral source to the Palmer Firm for debt settlement services disguised as legitimate legal services."[48]  The Legal Services Agreement with the Palmer Firm "was negotiated with and sold to Plaintiffs by DRG, who received payment for the sale."[49]  The Legal Services Agreement provides for "monthly payments to the Palmer Firm to cover an up-front retainer fee of 8% of all the client debts referred for settlement" which is paid to the Palmer Firm before the start of negotiations with creditors.[50]  When a debt is settled, the Palmer Firm collects "an additional 33% of the difference between the submitted debt amount and the final settlement amount."[51]  Other fees are also collected.[52]  "DRG's origination fee from Plaintiffs was 'equal to the first program payment' of $296[.]"[53]  DRG is not licensed as a prorater by the State of California.[54]

---

[46] Id.

[47] Id. at 5 (emphasis in original).

[48] Id.

[49] Id.

[50] Id.

[51] Id.

[52] Id.

[53] Id. at 9.

[54] Id. at 10.

## IV.  ISSUES

1.      Whether plaintiffs' claims against DRG should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim for relief.

2.      Whether DRG's alternative motion to transfer venue to the United States District Court for the Central District of California, Southern Division should be granted.

## V.  RULE 12(b)(6) STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must  state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law.  When considering a motion to dismiss for failure to state a claim, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[55]  To withstand a Rule 12(b)(6) motion, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[56]

Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short plain statement of

---

[55] In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir.2004) and Jones v. Greninger, 188 F.3d 322, 324 (5th Cir.1999))and Chehardy v. Allstate Indem. Co., 552 U.S.1182, 128 S.Ct. 1231 (2008).  In Katrina Canal Breaches, 495 F.3d at 205 n. 10, the Fifth Circuit noted:

> We have often stated that a claim should not be dismissed under Rule 12(b)(6) unless the plaintiff would not be entitled to relief under any set of facts or any possible theory he may prove consistent with the allegations in the complaint.  See, e.g., Martin K. Eby Constr., 369 F.3d at 467 (quoting Jones, 188 F.3d at 324).  This standard derived from Conley v. Gibson, which stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  But recently in Bell Atlantic, the Supreme Court made clear that the Conley rule is not "the minimum standard of adequate pleading to govern a complaint's survival."  127 S.Ct. at 1968-69.

[56] Id. at 205 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007)).

the claim" showing the pleader is entitled to relief.  Although "heightened fact pleading of

specifics"[57] may not be adopted when not authorized by the Federal Rules of Civil Procedure,[58] a

complaint "must contain either direct or inferential allegations respecting all the material

elements necessary to sustain recovery under <u>some</u> viable legal theory"[59] and a plaintiff's

pleading obligation includes the twin requirements of fact-based pleading and plausibility.  More

specifically, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."[60]  "Factual allegations must be enough to raise a right to relief above the

speculative level . . . on the assumption that all of the allegations in the complaint are true (even

if doubtful in fact)."[61]  The mere possibility of relief does not satisfy the threshold requirement of

Rule 8(a)(2) that the "plain statement" of a claim include factual "allegations plausibly

suggesting (not merely consistent with)" an entitlement to relief.[62]

　　　　When ruling on a motion to dismiss under Rule 12(b)(6), a court must accept as true all

---

[57]  <u>Twombly</u>, 127 S.Ct. at 1974.

[58]  <u>See</u> <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506, 515, 122 S.Ct. 992, 999 (2002).

[59]  <u>Twombly</u>, 127 S.Ct. at 1969 (quoting <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotation marks omitted; emphasis and omission in original)).

[60]  <u>Id.</u> at 1964-65 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944 (2007)).

[61]  <u>Id.</u> at 1965 (as quoted in <u>Katrina Canal Breaches</u>, 495 F.3d at 205).

[62]  <u>Id.</u> at 1966.

of the factual allegations contained in the complaint.[63]  But, a court need not accept as true

"conclusory allegations, unwarranted factual inferences, or legal conclusions," which will not

defeat a Rule 12(b)(6) motion to dismiss.[64]

## VI.  ARGUMENTS and ANALYSIS

**A.     DRG's Motion to Dismiss for Failure to State a Claim for Relief**

**1.     allegations regarding DRG's status as a "prorater"**

The primary question raised in DRG's Rule 12(b)(6) motion to dismiss is whether factual

allegations in the third amended complaint support plaintiffs' conclusion that DRG is a prorater

as defined by California in the CSBPPL.  As relevant to this question, the third amended

complaint alleges DRG is a prorater and, under the CSBPPL, is required be licensed.[65]  The third

amended complaint, at paragraph 28(a)-(k), alleges the following DRG "contractual services and

business activities" are within the definition of "prorater:"

   a.     advertise on TV for debtor clients in target markets, such as San Antonio,
          Texas, to which Plaintiffs responded to by calling an 800 number in
          California;

   b.     solicit clients for debt settlement by responding to 800 number calls with
          promises of debt settlement;

   c.     negotiate with responders to the 800 calls with terms for settling their
          debts, sell them on the debt settlement program and provide enrollment
          forms (Client Agreement and Legal Services Agreement) so the debtors

---

   [63]  Id. at 1965 (citing Swierkiewicz, 534 U.S. at 508 n.1, 122 S.Ct. at 996 n. 1; Neitzke v. Williams, 490 U.S. 319, 326-37, 109 S.Ct. 1827, 1832 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974)).

   [64]  Plotkin v. IP Axess, Inc., 407 F.3d 690, 696 (5th Cir. 2005) (citing Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004)).

   [65]  Docket no. 75 at 5-6.

can sign up and make the initial program payment;

d.      conduct the intake of the client for referral to the law firm;

e.      determine the origination, legal and service fee amounts to be charged;

f.      obtain the Plaintiffs' signatures on the Legal Services Agreement concurrent with obtaining their own Client Agreement;

g.      collect the initial retainer payment;

f.      determine the creditors to be accepted in the program;

g.      determine the amounts of the debts to be settled;

h.      determine the amounts to be collected from the debtors;

i.      determine the amounts to be distributed among the debtors creditors in settlement of the debtors obligations;

j.      make the referral to the Palmer firm for legal services; and,

k.      collect payment from the clients for the prorat[e]r services performed.[66]

**2.      summary of arguments**

DRG argues "there are no allegations [in the third amended complaint] that would cause DRG to be a 'prorater' as defined in the CSBPPL[.]"[67]   Specifically, DRG argues "Plaintiffs have not alleged, and cannot allege, that DRG received payments from Plaintiffs for the purposes of distributing the money to Plaintiffs' creditors."[68]   DRG contends plaintiffs have alleged only that "DRG engaged in 'debt settlement sales activities' and 'functioned as [a] solicitation and intake

---

[66] Id. at 7-8.

[67] Docket no. 77 at 4.

[68] Id.

processor.'"[69]  DRG asserts the exhibits to the third amended complaint show "the one-time

processing fee, the only fee allegedly received by DRG, was not distributed to Plaintiffs'

creditors."[70]  Additionally, DRG asserts plaintiffs have ignored the language of DRG's client

agreement and client authorization form that specify a third party will conduct the debt settlement

program.[71]

      With respect to plaintiffs' claim under the California CLRA, specifically § 1770(a)(17),

DRG argues the claim must be dismissed as it is based on plaintiffs' failed theory that DRG is a

"prorater" under California law.[72]  Assuming DRG is a "prorater," DRG argues, in sum, that

plaintiffs have not alleged a violation of CLRA § 1770(a)(17), the section upon which plaintiffs

have based their CLRA claim.[73]  Further, because claims under the CUCL "must be premised on

the violation of another California law" and plaintiffs have failed to state cognizable claims

under either the CSBPPL or the CLRA, DRG argues the CUCL claim should be also be

dismissed.[74]

      In response, plaintiffs assert the documentary evidence attached to the third amended

complaint is support for their factual allegations.[75]  Plaintiffs argue "**all** of DRG's activities,

---

[69]  Id.

[70]  Id. at 5.

[71]  Id.

[72]  Id. at 6-7.

[73]  Id. at 7.

[74]  Id. at 8.

[75]  Docket no. 82 at 2.

contractually expressed and in fact performed, 'used in the processing of my application for a

debt settlement program' fall within the regulation of a debt settlement 'prorater'" as defined in

CSBPPL § 12002.1.[76]  It is DRG's "written intent enumerated in the Client Agreement and Client

Authorization Form" combined with all their "activities conducted with and before the Plaintiffs

were referred to the third party debt settlement processor" that plaintiffs contend fall within the

"or in part" language of § 12002.1.[77]  In particular, plaintiffs reiterate the activities listed in the

third amended complaint at paragraph 28 a-k and events occurring between December 6, 2006,

when DRG sent documents to Mr. Wall, and December 28, 2006, when the Palmer Firm

allegedly received the referral from DRG.[78]  Plaintiffs contend DRG is a prorater because the

evidence shows that before the referral to the Palmer Firm,

> DRG collected the first $296 payment from Wall by check to the law firm for
> distribution to creditors, arranged for subsequent $296 monthly payments to be
> drafted from Wall's State Bank account totaling $20,719, all to settle $31,876 of
> debts with Wall's creditors.[79]

Plaintiffs concede their "CLRA claims are contingent on whether DRG is a prorater" and argue,

in sum, that they have properly stated a claim under § 1770(a)(17) as they have alleged DRG

promised the economic benefit "to get out of debt."[80]  "Because DRG has violated either or both

the CSBPPL and CLRA," plaintiffs argue they have stated a CUCL claim.

---

[76] Id. at 3 (emphasis in original).

[77] Id. at 4.

[78] Id. at 4-5.

[79] Id. at 6.

[80] Id. at 7-8.

In reply, DRG asserts "[t]he conclusory and unsupported arguments in Plaintiffs' Response do not change their failure to plead facts that would establish that DRG is a 'prorater'[.]"[81]  DRG contends plaintiffs have conceded that "DRG never contacted or negotiated with creditors, the specific conduct for a 'prorater' under the CSBPPL."[82]  DRG argues there is no support for plaintiffs' argument that the "or in part" language in the CSBPPL "somehow enlarges the statute to envelope DRG's marketing and administrative functions."[83]  In addition, DRG argues the allegations in, and the evidence with, the third amended complaint are the same as the "Court has already found . . . 'show that . . . the services DRG contracted to provide plaintiffs were . . . not for the debt management services.'"[84]  DRG contends "Plaintiffs do not, and cannot, allege that DRG 'receiv[ed] money or evidences thereof *for the purpose of distributing [it] among creditors* in payment or partial payment of the obligations of the debtor.'"[85]  Plaintiffs' reliance on the "or in part" language "is of no consequence," DRG argues, because "Plaintiffs have cited no cases, legislative history or other authority for their proposed dramatic expansion of California law" and a plain reading of the statute shows the "or in part" activities must be related to receiving money from debtors for distribution to creditors.[86]  DRG reiterates its arguments for dismissing plaintiffs' CLRA and CUCL claims.

---

[81]  Docket no. 83 at 1.

[82]  Id. at 2.

[83]  Id.

[84]  Id. (quoting docket no. 67 at 44).

[85]  Id. at 3 (emphasis in original) (quoting § 12002.1 of CSBPPL).

[86]  Id.

3.      analysis

Under California law, a "prorater" is:

> a person who, for compensation, engages in whole or in part in the business of receiving money or evidences thereof for the purpose of distributing the money or evidences thereof among creditors in payment or partial payment of the obligations of the debtor.[87]

Thus, to state a claim against DRG as a "prorater," the third amended complaint must allege facts to show DRG: (1) is a "person" under California law; (2) received compensation from plaintiffs; (3) wholly or partly engages in the business of receiving money or evidences" of money from debtors, **and did receive such money or evidences from plaintiffs**; (4) to distribute "among creditors in payment or partial payment" of plaintiffs' debts.  DRG does not dispute plaintiffs' allegation that it "is a 'person' within the meaning of California Civil Code §§ 1761 and 1770."[88] Nor is there any dispute that plaintiffs paid DRG $296 in compensation for its services, as alleged in the third amended complaint.[89]  The issue is whether the activities alleged in paragraph 28 a-k of the third amended complaint show DRG is in the business of receiving money or evidences of money from debtors, **and has received money or evidences of money from plaintiffs**, for distribution to plaintiffs' creditors.

Fairly read, no alleged activity suggests DRG actually received money or evidences of money from any debtor, including plaintiffs, for distribution to creditors.  The third amended complaint does allege DRG: "collected the initial retainer fee;" "determine[d] the creditors to be

---

[87]  Cal. Fin. Code § 12002.1 (West 1999).

[88]  Docket no. 75 at 12.

[89]  Id. at 9; see also exhibits 1, 2, 3, 6.

accepted in the program;" "determine[d] the amounts of debts to be settled;" "determine[d] the

amounts to be distributed among the debtor[']s creditors in settlement of the debtor[']

obligations;" and "collect[ed] payment from the clients for the prorat[e]r services provided."[90]

But, to the extent plaintiffs rely on such activities to show DRG is a prorater, the exhibits

plaintiffs have referenced in, and attached to, the third amended complaint appear to contradict

these allegations.[91]

DRG's Client Agreement and Client Authorization forms are exhibits to third amended

complaint.[92]  The Client Agreement states plaintiffs engaged "DRG to provide a third party

review of my financial situation and guidance for a debt referral," "I am seeking advice from

DRG," "DRG will provide me a third-party analysis for different repayment options, including

required payments."[93]  In addition, the Client Agreement states plaintiffs had the "sole and full

responsibility to provide DRG" with information regarding creditors and plaintiffs selected

---

[90]  Id. at 8, ¶ 28(i) and (k).

[91]  "In addition to the complaint itself, all exhibits attached to a complaint are part of the
pleadings."  Franks v. Prudential Health Care Plan, 164 F.Supp.2d 865, 871 (W.D. Tex. 2001)
(Biery, J.) (citing Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to
a pleading is a part thereof for all purposes.").  "'Therefore, when considering 'the pleadings on
their face,' a court may also consider the exhibits attached to the complaint in determining
whether a claim upon which relief may be granted exists.'"  Id. (quoting Sheppard v. Texas Dep't
of Transp., 158 F.R.D. 592, 595 (E.D. Tex. 1994).  "Where an exhibit contradicts an assertion
made in the complaint and eliminates any possible claim for relief, dismissal is appropriate."  Id.
(citing Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974);
Simmons v. Peavy-Welsh Lumber Co., 113 F.2d 812, 813 (5th Cir.), cert. denied, 311 U.S. 685,
61 S.Ct. 63 (1940)).

[92]  Docket no. 75, exhibits 2 and 6.

[93]  Id., exhibit 2.

accounts to be placed into debt management programs.[94]  Further, plaintiffs agreed "that making a payment equal to the first program payment, to DRG, constitutes an agreement to use their service(s)."[95] The Client Authorization states "DRG may at its sole discretion share [plaintiffs' consumer credit reports] with *the third party agency that will be servicing my account and negotiating on my behalf*," "the scope of my consent [to use electronic signatures, records, and disclosures] only applies to this transaction and this transaction only," "I understand this transaction covers all of DRG services and fees associated with the establishment, qualification, and *placement of my account with a third party*," and "[t]he scope of this consent applies to one transaction with [DRG] as agreed upon."[96]

Considered in isolation, the DRG forms show DRG contracted to provide plaintiffs with services for a review of plaintiffs' financial situation based on information plaintiffs provided about credit accounts and possible referral to a third-party agency for debt management.  More important, the forms show DRG was to receive from plaintiffs *one* payment for the services it provided.  The forms do not suggest DRG would engage in any activities with creditors on behalf of plaintiffs or would receive money or evidences of money to settle credit accounts.

When the DRG forms are considered with the other exhibits to the third amended complaint it is even more clear plaintiffs have provided no factual support for their conclusory allegation that DRG is a prorater.  The Palmer Firm agreement, also an exhibit to the third amended complaint, includes the following statements: "Client is engaging the Law Firm solely

---

[94]  Id.

[95]  Id.

[96]  Id., exhibit 6 (emphasis added).

for the purpose of negotiating in an attempt to settle certain debts with those of Client's

unsecured creditors that *Client elects* to include in the engagement;" the "Law Firm shall []

provide Client with monthly account statements showing all activity, and the current balance of

the *funds held by the Law Firm* in trust for Client;" "Client shall make monthly deposits into *Law*

*Firm's trust account* for the purposes of accumulating funds for settlement;" "Client agrees to

make equal and consecutive deposits of $296.00 on the 30 day of each month;" "Client

authorizes *Law Firm* to collect all payments due under this Agreement via automated back

account debit;" "Law Firm applies all of Client's initial payments to the *Retainer fee until it is*

*paid in full*;" and "[s]ubsequent payments are placed in a trust account for payment upon

settlement of referred accounts."[97]   Exhibit 1 to the third amended complaint reflects Mr. Wall's

first payment to DRG was by check and that all further payments – seventy in total – would be

from his State Bank account – "payment type: ACH" – to the Palmer Firm.[98]

      Collectively, the DRG forms and other evidence attached to the third amended complaint

show that: the Palmer Firm, not DRG, was to negotiate settlements with plaintiffs' creditors;

plaintiffs, not DRG, determined which credit accounts would be included in the debt

management program; DRG received one payment from plaintiffs for $296; seventy additional

payments of the same amount were to be automatically withdrawn from plaintiffs' bank account

and received by the Palmer Firm; the Palmer Firm, not DRG, collected its retainer fees from

plaintiffs' initial payments to the Firm; and the funds the Palmer Firmed received were for

settlement of plaintiffs' credit accounts.   These facts are contrary to plaintiffs' allegations of

---

[97]   Id., exhibit 3 at ¶¶ B, C, F, G-7.

[98]   Id., exhibit 1.

DRG's activities and do not support a claim that DRG acted as a prorater.  No other part of the third amended complaint or the attached exhibits can be construed to allege or provide facts showing DRG received money or evidences of money from plaintiffs for distribution to plaintiffs' creditors such that DRG was a prorater as defined in the CSBPPL.

The next question is whether plaintiffs' failure to allege facts that DRG was a prorater forecloses plaintiffs' claims under the CLRA and CUCL.  With respect to the CLRA, the third amended complaint alleges:

> 49.     DRG's conduct violated and continues to violate the CLRA in at least the following respects:
>
> (a)     In violation of section 1770(a)(17) of the CLRA, DRG inserted an unconscionable provision in a contract.
>
> 50.     DRG engaged in these unfair or deceptive acts and practices with the intent that they result, and did result, in the sale of prorater services to Plaintiffs and the Class.[99]

Plaintiffs concede their CLRA claim "hinges" on DRG's actions as a prorater.[100]  Accordingly, the claim fails because, as discussed, there are no factual allegations in the third amended complaint to support plaintiffs' conclusory claim that DRG is a prorater.  Moreover, plaintiffs' CLRA claim is confusing.  Plaintiffs expressly rely on § 1770(a)(17) but allege "DRG inserted an unconscionable provision in the contract," an allegation relevant to § 1770(a)(19).[101] Section 1770(a)(17) makes unlawful "[r]epresenting that the consumer will receive a rebate,

---

[99] Docket no. 75 at 12.

[100] Docket no. 82 at 7.

[101] See Cal. Civ. Code § 1770(a)(19) (West 2009) ("Inserting unconscionable provision in contract").

discount, or other economic benefit, if the earning of the benefit is contingent on an event to

occur subsequent to the consummation of the transaction."[102]

Assuming plaintiffs may have intended to sue DRG under the CLRA for actions apart

from the conclusory allegation that DRG is a prorater, plaintiffs have failed to state a claim under

either § 1770(a)(17) or § 1770(a)(19).  Fairly read, the third amended complaint does not allege

DRG made any promises to plaintiffs of economic benefits contingent on future events, as

relevant to a claim under § 1770(a)(17).  Moreover, the Client Agreement expressly provides that

"DRG does not guarantee any specific settlement offer or payment from/to your creditors."[103]

With respect to a claim under § 1770(a)(19), the third amended complaint does not identify a

specific DRG contract provision to support the conclusory allegation that "an unconscionable

provision" was inserted into the contract.

As for the CUCL claim, the statute proscribes "unlawful, unfair, or fraudulent business

acts or practices.[104]  The third amended complaint alleges "DRG's acts and practices constitute

unlawful business practices[.]"[105]  For the CUCL, "[u]nlawful practices are any forbidden by

law."[106]  "By proscribing any unlawful business practice, [the CUCL] borrows violations of other

laws and treats them as unlawful practices that the unfair competition law makes independently

---

[102]   CAL. CIV. CODE § 1770(a)(17) (West 2009).

[103]   Docket no. 75, exhibit 2.

[104]   CAL. BUS. & PROF. CODE § 17200 (West 2008).

[105]   Docket no. 75 at 13.

[106]   Garcia v. Wachovia Mortgage Corp., 676 F.Supp.2d 895, 911 (C.D. Cal. 2009)

actionable."[107]  "Virtually any state, federal or local law can serve as the predicate for an action" under the CUCL.[108]  Plaintiffs have predicated their CUCL claim on DRG's alleged violations of the CSBPPL and the CLRA.[109]  Because plaintiffs have failed to allege facts showing DRG violated the CSBPPL and have failed to state a claim for relief under the CLRA, they have also failed to state a claim under the CUCL.[110]

In sum, plaintiffs have not alleged or provided factual support for their claim that DRG is a prorater as defined in the CSBPPL.  Nor have plaintiffs stated claims for relief under either the CLRA or the CUCL.  Accordingly, the DRG's Rule 12(b)(6) motion to dismiss should be **granted** and plaintiffs' claims against DRG under California law should be **dismissed.**

## B.    DRG's Alternative Motion to Transfer Venue

In the event its motion to dismiss might be denied, DRG alternatively has moved to transfer the case to the United States District Court for the Central District of California, Southern Division.[111]  DRG argues, in sum, that "the convenience of the parties and witnesses,

---

[107]  Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 540 (Cal. 1999) (citations and internal punctuation omitted).

[108]  Garcia, at 676 F.Supp.2d at 911 (citations omitted).

[109]  Docket no. 75 at 13; docket no. 82 at 9 ("For the reasons stated in sections A and B, Plaintiffs have a cognizable claim under CUCL because DRG has violated either or both the CSBPPL and CLRA.").

[110]  Garcia, at 676 F.Supp.2d at 911 ("First, it must be noted as a matter of bookkeeping that to the extent Plaintiff's predicate federal statutory claims under TILA, RESPA, and FDCPA are time barred and/or otherwise dismissed, . . . Plaintiff's state statutory [CUCL] claim predicated on these federal statutory violations must necessarily fail and must also be dismissed without prejudice because they do not state an 'unlawful' [C]UCL claim.").

[111]  Docket no. 77 at 8-13.

[and] in the interest of justice," the case should be transferred to the Southern Division of the Central District of California.[112]  Plaintiffs oppose such a transfer, arguing plaintiffs' forum selection should not be rejected as, in sum and on balance, it is not "so inconvenient as to justify a transfer."[113]

### 1.      section 1404(a) standards

"Congress enacted § 1404(a) to permit change of venue between federal courts."[114] Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court where it might have been brought."[115]

"[H]e who seeks the transfer must show good cause," a burden that "reflects the appropriate deference to which the plaintiff's choice of venue is entitled."[116]  "Good cause" means "a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'"[117]  If the movant "demonstrates that the transferee venue is clearly more convenient," good cause is shown and the case should be transferred.[118]

---

[112]  Id.

[113]  Docket no. 82 at 12 and 9-12.

[114]  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253, 102 S.Ct. 252, 264 (1981).

[115]  28 U.S.C. § 1404(a).

[116]  In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008), cert. denied sub nom, Singleton v. Volkswagen of Am., Inc. __U.S. __, 129 S.Ct. 1336 (2009).

[117]  Id. (citing § 1404(a)).

[118]  Id.

24

When considering whether to transfer venue under § 1404(a), the first determination "is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."[119]  If the case could have been filed in the transfer district, consideration is given to the convenience of the parties and witnesses and to the interests of justice.[120]  "'[C]onvenience turns on a number of private and public interest factors, none of which are given dispositive weight."[121]  The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) and all other practical problems that make trial of a case easy, expeditious, and inexpensive."[122]  The public concerns include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of conflict of laws or in the application of foreign law."[123]

### 2.    analysis

In light of the above standards, the first determination is whether the United States District Court for the Central District of California, Southern Division is a court in which plaintiffs could have filed the present case.  Plaintiffs assert subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because "the matter in controversy

---

[119]  In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004).

[120]  Id.

[121]  Id.

[122]  Id. (citing Piper Aircraft, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6).

[123]  Id. (citing Piper Aircraft, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6).

exceeds the sum of $5,000,000, exclusive of interest and costs, and is a class action involving 100 or more potential class members in which any member of the class of Plaintiffs is a citizen of a state different from any defendant."[124]  Pursuant to the general venue provision in § 1391, when jurisdiction is based on diversity, venue is proper in a judicial district where the defendant resides or in a judicial district where a substantial part of the events giving rise to the claims occurred.[125]

It is undisputed that DRG has its principal place of business in Irvine, California, and plaintiffs do not dispute Irvine is in the Central District of California, Southern Division. Because defendant resides in Central District of California, Southern Division, that District and Division appear to be a place were plaintiff could have properly filed the present class action and a proper court to which the case could be transferred.  As the case could have been filed in the Central District of California, Southern Division, consideration must be given to the private and public interest factors affecting the propriety of transfer.

**a.     private interest factors**

DRG contends the first private interest factor, ease of access to sources of proof, weighs in favor of transfer because "all documents, agreements, employees, or other evidence would be located" in DRG's Irvine, California office.[126]  Although plaintiffs argue the "documents necessary for the defense of this suit are easily accessible" and "are readily available for all parties in this district" because "[s]ources of proof are easily accessible with today's advances in technology, electronic storage and internet," plaintiffs do not dispute that most or all documents

---

[124]  Docket no. 75 at 3.

[125]  28 U.S.C. § 1391(a).

[126]  Docket no. 77 at 10; <u>see</u> docket no. 27, Waring decl. at ¶¶ 8 and 23.

and agreements relevant to their claims are located in California.  The Fifth Circuit has held

recent technological advances "do[]not render this factor superfluous."[127]  Accordingly, despite

any conveniences afforded by recent advances, the first private interest factor weighs in DRG's

favor.

The second factor related to the availability of non-party witnesses is "arguably the most

important" of the private interest factors.[128]  DRG asserts "key witnesses in this action will likely

be the current and former employees of DRG, all of whom reside in California" and would be

"within the subpoena power of the Central District of California."[129]  As plaintiffs argue,

defendants have not specifically identified the "key witnesses."  Plaintiffs argue television station

personnel and advertising witnesses in the San Antonio area . . . are potential witnesses for both

parties,"[130] but do not claim such persons are key witnesses.  Generally, non-party witnesses

located in California are not subject to this Court's subpoena power and witnesses in San

Antonio are not subject to subpoena in the Central District of California.[131] But, to the extent any

witnesses are current DRG employees, they can be compelled to testify wherever DRG is sued.[132]

Accordingly, the weight of the second factor appears to be neutral.

---

[127] Volkswagen of Am., 545 F.3d at 316.

[128] Houston Trial Reports, Inc. v. LRP Publ'n, Inc., 85 F.Supp.2d 663, 668 (S.D. Tex. 1999).

[129] Docket no. 77 at 10.

[130] Docket no. 82 at 10.

[131] See FED. R. CIV. P. 45(c).

[132] Houston Trial Reports, 85 F.Supp.2d at 669 (quoting Continental Airlines, Inc. v. American Airlines, Inc., 805 F.Supp. 1392, 1397 (S.D. Tex. 1992)).

Similarly the weight of the third private interest factor, cost of attendance to witnesses, appears to be neutral.  Regardless of where the trial would be held, non-party witnesses would likely incur costs for time from work and for accommodations.  Because DRG has not identified issues relevant to the fourth private interest factor, other practical problems favoring transfer, that factor appears to be neutral as well.  In sum, the private interest factors weigh slightly in favor of transfer, and whether to transfer will rest on the weight of the public interest factors.

### b.    public interest factors

Although DRG has not addressed the first public interest factor, administrative difficulties such as court congestion, plaintiffs argue "the docket congestion between this [D]istrict . . . and the Central District of California favors the current venue based on recent federal-court management statistics."[133]  Plaintiffs cite no actual statistics to support this argument.  Because DRG does not claim there are issues relevant to the first public interest and nothing suggests administrative difficulties are greater in California than in this District, the weight of the first factor appears to be neutral.[134]

On the other hand, the remaining factors – localized interest, familiarity with California law, and avoidance of conflict of laws – weigh in favor of transfer.  Although Texas has an interest in protecting the local plaintiffs, the third amended complaint alleges a nationwide class action.  Thus, any other state where potential class members may reside would also be interested

---

[133]  Docket no. 82 at 11.

[134]  DRG, citing www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx, notes that "[p]ursuant to the Federal Court Management Statistics, the length of time between filing and trial in the Western District of Texas for 2009 is 17.5 months, while the length of time in the Central District of California is 19 months."  Docket no. 83 at 2 n.1.

in the outcome of the case.[135]  But, given that plaintiffs have elected to bring the class action

against DRG, a California corporation, under California consumer protection laws, the California

court would obviously be more familiar with the application of the laws governing the class

claims, and the State of California would have a great interest in resolving the claims of any

consumers affected by those laws against a California corporation.

 **3.**    **conclusion**

  In sum, the private and public interest factors, in combination, weigh in favor of

transferring venue pursuant to § 1404(a).  Accordingly, DRG's alternative motion to transfer

should be **granted**.  More specifically, if the District Judge rejects the portion of this report that

recommends the claims against DRG be dismissed for failure to state a claim for relief, the

District Judge should order the immediate transfer of this case to the United States District Court

for the Central District of California, Southern Division.  Alternatively, if the District Judge

accepts this report in its entirety, the District Judge may direct the United States District Clerk to

transfer the case, without the need for any further Order from the Court, if and when plaintiffs

---

  [135]  See Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524, 67 S.Ct. 828, 831-32 (1947) ("Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice.  He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.  In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.  But where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves . . . [in the] cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.").

may file any motion for leave to file a fourth amended complaint in this Court.

**C.    Plaintiffs' Motion for Class Certification and the District Judge's Order to Stay**

On October 2, 2009, plaintiffs filed a motion for class certification and memorandum in support.[136]  On October 13, 2009, the District Judge stayed the case pending the determination of threshold issues, including, for example, personal jurisdiction.[137]  On October 30, 2009, the Court clarified that the Court would not rule on plaintiffs' motion for class certification without first setting a briefing schedule on plaintiffs' motion asking a class be certified.[138] On April 7, 2010, the District Judge reiterated that the stay would not be lifted until the undersigned so recommended, based on the status of pending motions.[139]

As discussed, this report recommends that the claims against DRG, the only remaining defendant, be dismissed and, if plaintiffs file a motion to file a further amended complaint, the case be transferred.  To the extent it may be relevant, the reasons for implementing a stay in pretrial proceedings have been resolved such that the stay can be lifted.  Plaintiffs' October 2, 2009 motion for class certification was filed at the inception of the case, when other parties and claims were then pending such that, to the extent it may be relevant, if plaintiffs wish to pursue class certification, then plaintiffs should re-presenting its request directed to its then-"live" pleading.  Thus, this report recommends that the partial pretrial stay[140] be **lifted** and plaintiffs'

---

[136]  Docket no. 39.

[137]  Docket no. 47.

[138]  Docket no. 60.

[139]  Docket no. 72 at 3.

[140]  Docket nos. 47 and 72 at 3.

motion for class certification[141] be **dismissed without prejudice**.

## VII.  RECOMMENDATIONS

Based on the foregoing analysis, it is recommended that:

- DRG's Rule 12(b)(2) motion to dismiss[142] be **GRANTED** and the claims against DRG under California law be **dismissed without prejudice** for failure to state a claim for relief;

- DRG's alternative motion to transfer venue pursuant to 28 U.S.C. § 1404[143] be **GRANTED**; if the District Judge rejects the recommendation that the claims against DRG be dismissed, then this case should be immediately transferred to the United States District Court for the Central District of California, Southern Division; on the other hand, if the District Judge accepts this report in its entirety, the District Judge may authorize the District Clerk to transfer this case to the United States District Court for the Central District of California, Southern Division, without the need for further Order from the Court, if and when plaintiffs may file any motion for leave to file a fourth amended complaint in this Court;

- plaintiffs' motion for class certification,[144] previously held in abeyance pending further Order,[145] be **dismissed without prejudice**; and

- the District Judge's October 13, 2009 Order staying certain pretrial proceedings[146] be **lifted** as the reasons for the stay have been resolved.

## VIII.  INSTRUCTIONS FOR SERVICE AND NOTICE
## OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation

---

[141]  Docket no. 39.

[142]  Docket no. 77.

[143]  Id.

[144]  Docket no. 39.

[145]  See docket nos. 47 and 60.

[146]  Docket nos. 47 and 72 at 3.

on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.  As provided in 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within **14 days** after being served with a copy, unless this time period is modified by the District Court.  A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a de novo determination by the District Court.[147]  Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**SIGNED and ENTERED this 22nd day of June, 2010.**

_Pamela A. Mathy_

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[147] See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).